## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

**(1) SOUTHERN STAR CENTRAL GAS
PIPELINE, INC.,**

        **Plaintiff,**

v.

**(1) TRACT NO. 28869, 7.8 ACRES OF
LAND, MORE OR LESS, IN FEE, 4.5
ACRES OF LAND, MORE OR LESS,
TEMPORARY WORKSPACE,**

**(2) PAUL WAYNE KELLY REVOCABLE
TRUST dated March 26, 2013, doing
business as PAUL WAYNE KELLY
REVOCABLE TRUST A and B dated
March 26, 2013, Brian Paul Kelly and
Katherine Lynn Ferguson, Co-Trustees of
the Paul Wayne Kelly Revocable Trust
dated March 26, 2013, and**

**(3) ANY UNKNOWN OTHERS,**

        **Defendants.**

**Case No.**   26-cv-00084-JFJ

## <u>VERIFIED COMPLAINT FOR CONDEMNATION</u>

Plaintiff Southern Star Central Gas Pipeline, Inc. ("Plaintiff" or "Southern Star"), by and

through counsel, files this Verified Complaint for Condemnation ("Verified Complaint") pursuant

to the Natural Gas Act ("NGA"), 15 U.S.C. § 717 *et seq.*, and FED. R. CIV. P. 71.1. Southern Star

seeks an order of condemnation to construct and operate a new compressor station in Osage

County, Oklahoma (the "Compressor Station" as hereinafter defined) and for such other legal and

equitable relief the Court finds appropriate. Southern Stars seeks the condemnation of 7.8 acres of

land, more or less, in fee simple ("Property") and 4.5 acres of land, more or less, as a Temporary

Workspace Easement.[1] The Property and the Temporary Workspace Easement sit on the same tract of land which the Paul Wayne Kelly Revocable Trust dated March 26, 2013 ("Trust") owns. Southern Star also requests injunctive relief granting it immediate possession of the Property and the Temporary Workspace Easement, so that it may commence and complete construction and restoration efforts and operate and maintain the Compressor Station while the Court determines the proper amount of compensation for the taking.

### Jurisdiction, Venue, and Authority for Taking

1.      The Federal Energy Regulatory Commission ("FERC") issued Southern Star a Certificate of Public Convenience and Necessity ("Certificate") on January 13, 2026, under Docket No. CP25-19.[2] Docket No. CP25-19-000, 194 FERC ¶ 61,026 (FERC Accession No. 20260113-3071). In the Certificate, FERC authorizes Southern Star to construct and operate the Cedar Vale Compressor Station Project ("Cedar Vale Project" or "Project") in Osage County, Oklahoma to "enable Southern Star to provide additional firm transportation service in its Market Area and Production Area." *See* Certificate, Exhibit 2, ¶ 1. Thus, FERC approved Southern Star's expansion of its interstate natural gas transmission system by constructing and operating the new Cedar Vale Compressor Station between Southern Star's Blackwell Compressor Station ("Blackwell Station")—located in Blackwell, Oklahoma to the west of the Cedar Vale Station—and Grabham

---

[1] Southern Star describes the Compressor Station, Property, and Temporary Workspace below. Additionally, Southern Star identifies and describes the Property and Temporary Workspace in the Land and Ownership Description attached hereto as **Exhibit 1** and incorporated herein. In Exhibit 1, Southern Star includes the instruments in which the Trust granted Southern Star easements on the subject tract. Southern Star refers to the easements collectively as the "existing easement" or "existing easements." As the Trust has refused to engage in negotiations with Southern Star, Southern Star has not conducted a survey of the Property and Temporary Workspace Easement because Southern Star does not have access to the subject land. Therefore, Southern Star cannot attach a plat of the Property and Temporary Workspace Easement.

[2] Southern Star attaches a true and correct copy of the Certificate as **Exhibit 2** and incorporates the Certificate herein.

Compressor Station ("Grabham Station")—located in Independence, Kansas to the east of the Cedar Vale Sation. *See id.* ¶ 3-4. The proposed Cedar Vale Compressor Station will consist of "a new 6,091 ISO-rated horsepower (hp) gas-fired centrifugal compressor unit, suction and discharge piping, and other appurtenant facilities[,]" including "office space, tie-ins, gas cooler, valves, control systems, fencing, and security equipment." *See id.* ¶ 3; EA, Exhibit 3, at 12.[3] The Cedar Vale Project will provide incremental firm capacity of up to 98,000 dekatherms per day ("Dth/d") for transportation in the Market Area and 35,000 Dth/d for transportation in the Production Area.[4] *See* Certificate, Exhibit 2, ¶ 3. The Project will assist shippers in moving gas to markets in and around Springfield, Joplin, Kansas City, and Topeka in Missouri and Kansas. Affidavit, **Exhibit 4**, ¶ 6. Southern Star estimates that the Project will cost approximately $48.4 million. *See id.* at Certificate, Exhibit 2, ¶ 5.

      2.     Southern Star files this civil action for the taking of property interests under the power of eminent domain,and for the determination and award of just compensation to Defendants. The Court has jurisdiction of this action pursuant to 15 U.S.C. § 717f(h), which provides the authority for the taking. Additionally, the Court has jurisdiction of this action under 28 U.S.C. § 1331, because this action arises under the laws of the United States, and, under 28 U.S.C. § 1337, because this action arises under an Act of Congress regulating interstate commerce.

---

[3] As part of the Certificate issuance process, FERC issued an Environmental Assessment ("EA"), which Southern Star encloses as **Exhibit 3** and incorporates the EA findings herein.

[4] Southern Star's system consists of two rate zones. A rate zone is a geographic region of Southern Star's system that charges a discrete rate for the transportation of gas. On Southern Star's system, the rate charged to customers is different depending on which rate zone the gas is located. The two rate zones are the Production Area, located primarily on the western half of the system, and the Market Area, located primarily on the eastern half of the system. The demarcation points of the two respective rate zones are located at the discharge side of each of the Hesston (Kansas), Blackwell (Oklahoma), and Cotton Valley (Oklahoma) compressor stations.

3.      As required under 15 U.S.C. § 717f(h), Defendants claim compensation in excess of $3,000.00 for the Property and Temporary Workspace Easement, and Southern Star has offered to purchase the Property and Temporary Workspace Easement for an amount in excess of $3,000.00.

4.      Southern Star has not been able to acquire the Property and Temporary Workspace Easement by contract or reach an agreement as to the just compensation required for Southern Star to obtain the Property and the Temporary Workspace Easement from Defendants.

5.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because the property that is the subject of this action is situated within this judicial district, and it is proper to join the property identified in Exhibit 1 and Defendants in this action.

### Parties

6.      Southern Star is an interstate natural gas company as defined under 15 U.S.C. § 717a(6). Certificate, Exhibit 2, at ¶ 2. Southern Star is engaged in the interstate storage and transportation of natural gas through several states, including Osage County, Oklahoma. *See id.* Southern Star is a Delaware corporation with a principal place of business at 4700 State Route 56, Owensboro, Kentucky 42301. Southern Star is registered to do business in, and is engaged in business in, the State of Oklahoma and within this federal district.

7.      Southern Star is organized for the purpose, among other things, of transporting and storing natural gas in interstate commerce under authorizations granted by FERC. As Southern Star meets the definition of a natural gas company under the NGA, it is qualified to construct, install, own, operate, and maintain a compressor station for the transmission of natural gas in interstate commerce.

8.     Pursuant to the Certificate, FERC found that Southern Star has demonstrated a need for the Project as:

> Southern Star has entered into four precedent agreements for approximately 80% of the capacity . . . support[ing] a finding of need for the proposed [P]roject[;] . . . [t]he [P]roject will not have adverse impacts on existing customers, existing pipelines[,] and their customers[;] [] the [P]roject will have minimal economic impacts on landowners and surrounding communities[;] . . . [the Project] will not have adverse impacts on Southern Star's existing shippers or other pipelines and their existing customers[;] and the [P]roject's benefits will outweigh any adverse effects on landowners and surrounding communities.

Certificate, Exhibit 2, ¶¶ 17, 20, 42.

9.     Southern Star requires the Property and Temporary Workspace Easement sought herein to construct and operate the Project and to fulfill the public purposes for which FERC issued the Certificate. *See id.* ¶¶ 1, 19, 31, 42.

10.     Southern Star seeks to construct the Project on a single tract of land, impacting a single landowner, the Trust, on whose property Southern Star already has both below and above ground facilities.

11.     Though unlikely, to the extent that others, whose names Southern Star could not ascertain by a reasonably diligent search of the records, may have or claim some interest in the Property and Temporary Workspace Easement, these persons and/or entities are made parties to this action under the designation of "Unknown Owners" pursuant to FED. R. CIV. P. 71.1(c)(3). The Trust, whose entity is known and whose name Southern Star could ascertain by a reasonably diligent search of the records as owning or claiming an interest in the tract, as identified and described in Exhibit 1, any "Unknown Owners," and the subject tract are referred to as "Defendants."

12.     The Property and Temporary Workspace Easement are within the Certificate's scope, and Southern Star must obtain the Property and Temporary Workspace to construct and

operate the Cedar Vale Project as authorized by FERC.[5] *See* Certificate, Exhibit 2, ¶¶ 1, 19, 31, 42, Appendix Environmental Conditions ¶ 4.

13.     Southern Star designed the Project to minimize its impact on landowners. Southern Star sited its proposed facility on property that is adjacent to its existing facilities and/or within existing easements to minimize the effects to landowners. The easements include above ground facilities and below ground pipeline. Southern Star intends to condemn the proposed Compressor Station's site in fee simple and condemn a Temporary Workspace Easement on that same tract. While Southern Star has attempted to engage in good faith negotiations with the Trust, Southern Star and the Trust have not reached an agreement.  Southern Star has extended written offers to the Trust to purchase the Property in fee simple and obtain the Temporary Workspace Easement. However, the Trust declined Southern Star's initial offer and failed to respond to Southern Star's subsequent offers.

14.     Therefore, Southern Star must exercise its right of eminent domain under 15 U.S.C. § 717f(h) to acquire the needed property for the Cedar Vale Project.

**The Cedar Vale Project**

15.     The Compressor Station will consist of approximately 7.8 acres of permanent workspace, which includes 0.57 acres of Southern Star's existing easement, and 4.5 acres of temporary workspace for use during construction. *See* Certificate, Exhibit 2, at ¶¶ 19, 31; EA, Exhibit 3, at 14 ("About 7.[8] acres of land would be permanently required to operate the Project . . . [, and] [t]he remaining 4.[5] acres not within the permanent footprint of the [c]ompressor [s]tation would be restored and allowed to revert to preconstruction land use.").

---

[5] Southern Star attaches hereto as **Exhibit 5** and incorporates by reference herein a map depicting the Cedar Vale Project's overall approved footprint**.**

16.    Southern Star seeks to locate the Compressor Station between its existing Blackwell Station, to the west, and the Grabham Station, to the east.[6] The Project will provide needed capacity in the Market Area, including from Blackwell Station, to and through Grabham Station, and on to end-use markets. Specifically, the proposed Compressor Station will allow for optimized utilization of facilities downstream of Grabham Station to support deliveries to the markets downstream of existing stations at Saginaw (Missouri) and Humboldt, Welda, and Ottawa (Kansas). Further, the Project will provide needed flexibility and deliverability from both Grabham and Blackwell Stations as well as improve the current pressure and flow conditions at Grabham Station. Specifically, the new parameters will allow for more flexibility with Grabham Station units as well as downstream compressor stations at Saginaw, Humboldt, Welda, and Ottawa. Ultimately, the Project will add capacity in both the Production and Market Areas, supplying gas to urban areas in Missouri and Kansas such as Springfield, Joplin, Kansas City, and Topeka.

17.    To meet the demands of Southern Star's shippers and their customers, the Cedar Vale Project will provide additional incremental firm capacity of up to 98,000 Dth/d for transportation in the Market Area and 35,000 Dth/d for transportation in the Production Area. Southern Star's Market Area is, at minimum, 98 percent subscribed, and Southern Star's Straight Blackwell Line, where Southern Star will locate the added Production Area capacity, is fully subscribed.

18.    The Cedar Vale Project represents an approximate $48.4 million private investment in energy infrastructure in the United States.

---

[6] The "Stations" referenced in this paragraph are facilities that include a fenced-in facility containing large compressor units, each unit at least the size of a large vehicle. The compression units generate the pressure necessary to transport natural gas through the pipeline over hundreds of miles. Southern Star's system contains over 40 compressor stations spaced approximately 50 miles apart, depending on the system's needs.

19.     Southern Star executed binding Precedent Service Agreements ("Agreements") with shippers, who are existing customers and all either natural gas or electric utilities, for long-term firm transportation service for incremental capacity of approximately 88,000 Dth/d in the Market Area and 20,000 Dth/d in the Production Area. Certificate, Exhibit 2, ¶ 5. In order to satisfy the Agreement's requirements, Southern Star must expeditiously commence the Project's construction to meet the needs and requirements of shippers and their receiving customers. The Agreements identify a target In-Service Date of December 1, 2026.

20.     To ensure the Project's timely construction, Southern Star also executed a contract for the Compressor Station's fabrication. Under the contract, the fabricator mandates a stringent production schedule. The contract also prescribes significant contractual penalties for delays caused by Southern Star.

21.     The Cedar Vale Project involves numerous stakeholders, including gas shippers, consumers, environmental and public interest groups, and numerous governmental agencies, including FERC, the United States Fish and Wildlife Service, and Native American Tribes.

22.     Per the Certificate, the Cedar Vale Project's construction must comply with applicable environmental permits, approvals, and regulations. *See, e.g.*, Certificate, Exhibit 2, at ¶¶ 33, 34, 37, 45, Environmental Conditions Appendix; EA, Exhibit 3, at 16. As part of the Certificate issuance process, FERC issued the EA, which assesses the potential environmental effects of the Project's construction and operation and alternative locations for the Project. In the EA, FERC concluded that the Project, when constructed and operated in accordance with applicable laws, regulations, and mitigating measures prescribed and recommended in the EA, will have no significant impact on the environment. *See* EA, at 56-60. Additionally, the EA found that none of the possible "alternatives offered a significant environmental advantage to the proposed

8

site and[,] as a result[,] none of these sites are environmentally preferable." *Id.* at 53. In the Certificate, FERC concluded:

> We accept the environmental recommendations in the EA and are including them as conditions in an appendix to this order. Based on the analysis in the EA, as supplemented or clarified herein, we conclude that if constructed and operated in accordance with Southern Star's application and supplements, and in compliance with the environmental conditions in the appendix to this order, our approval of this proposal would not constitute a major federal action significantly affecting the quality of the human environment.

*See* Certificate, Exhibit 2, ¶ 40.

23.     Per the EA and Certificate, Southern Star must file with the Secretary "any revised detailed survey alignment maps/sheets . . . with station positions for all facilities approved by the Order[]" prior to commencing construction. Certificate, Exhibit 2, Environmental Conditions Appendix, ¶ 4; EA, Exhibit 3, at 56. If Southern Star does not receive immediate access to the Property and Temporary Workspace Easement, Southern Star cannot complete the necessary and required pre-construction surveys, timely proceed with construction upon issuance of a FERC notice to proceed, and place the Project in-service by the contractual In-Service Date as expected by Southern Star's shippers and their customers.

24.     The Cedar Vale Project's construction schedule is constricted and involves a complex logistical effort that requires the careful coordination of construction activities that must begin without delay. Southern Star must immediately enter the Property and Temporary Workspace Easement to perform geotechnical borings at the precise foundation locations to verify subsurface conditions and confirm the assumptions Southern Star used in its foundation design. Southern Star must also immediately commence site grading to prepare for construction. Southern Star's contractors are responsible for installing suction/discharge piping and a filter separator and building out the office/warehouse, septic system, tanks, and blow down silencers. Each of these

activities is contingent upon the completion of geotechnical verification and site grading.  Any further delay in access will have a cascading effect, threatening Southern Star's ability to meet contractual obligations.

25.     To meet the needs of Southern Star's shippers and their customers and comply with applicable regulations and Southern Star's obligations under the Certificate, Southern Star must begin various surveys, pre-construction, and, then, construction immediately upon receipt of a notice to proceed from FERC.

26.     Time is of the essence. Southern Star must adhere to the project schedule. If construction of the Cedar Vale Project is delayed, Southern Star likely cannot comply with its contractual obligations under the precedent agreements and fabricator contract and, thus, cannot meet the needs and requirements of its shippers and their receiving customers.

**Count One: Condemnation of Property Interests to Be Acquired and Property Use**

27.     Southern Star incorporates by reference paragraphs 1 through 26.

28.     Southern Star does not seek to condemn any rights not authorized by the Certificate.

29.     Southern Star seeks to condemn the Property in fee simple, as set forth in Exhibit 1, in order to construct, operate, and maintain the Compressor Station.

30.     Southern Star also seeks to condemn temporary workspace, described and depicted in Exhibit 1 hereto as the "Temporary Workspace Easement." Southern Star will use the Temporary Workspace for the safe operation and staging of equipment and materials for installation of the Compressor Station and facilities. The Temporary Workspace will include areas adjacent to the project site and Southern Star's existing easement. Southern Star will strip topsoil in the Temporary Workspace to create a stable working surface, graded and restored as near as possible to pre-existing conditions following construction activities. Due to safety concerns with

excavating in areas where Southern Star has active pipelines, Southern Star will not strip topsoil within areas of the Temporary Workspace that overlap with Southern Star's existing easement. During construction, Southern Star will use its existing easement for equipment staging and vehicle parking. Southern Star will use the Temporary Workspace Easement solely for the Project's initial construction and to restore and remediate the land after initial construction. The Easement shall expire upon completion of the initial construction, restoration, and remediation or upon the expiration of 24 months from the commencement of construction in Osage County, whichever occurs first. Thereafter, all of Southern Star's privileges and rights on or to use of the Temporary Workspace Easement shall terminate.

31.    The right to use the Temporary Workspace Easement shall belong to Southern Star and its agents, employees, designees, contractors, guests, invitees, successors, and assigns, and all those acting by or on behalf of it for the above-mentioned purposes. Southern Star seeks the right of ingress and egress over, across, and through the Temporary Workspace Easement (while it remains in effect) and to access the same from other rights-of-way, easements, and roads, to which Southern Star has the right of access, for the above stated purposes and for all other purposes at all times convenient and necessary to exercise the rights granted by the Certificate as applied and enforced by this Court.

32.    Southern Star will construct no permanent facilities of any kind or character on the Temporary Workspace Easement.

33.    Pursuant to the Temporary Workspace Easement sought herein, Southern Star shall have the right to: construct, maintain, and change slopes of cuts and fills to ensure proper lateral and subjacent support and for drainage for the Compressor Station; remove trees, brush, crops, and

other vegetation and obstructions from the Temporary Workspace Easement (while it remains in effect); and pursue all purposes outlined in paragraph 30.

34.     Southern Star shall have the right to construct, install, maintain, and replace poles, wires, and cables as necessary to provide electricity and/or communication capabilities to the Temporary Workspace.

35.     Upon completion of construction, Southern Star shall repair, or reinstall, at its sole expense, permanent fencing and tiling destroyed or disturbed by project construction activities, along substantially the same alignment, configuration, and approximate location of the Defendants' existing fences and tiling system.

36.     Southern Star does not seek to acquire any royalty, working, revenue, overriding, or other oil, gas, mineral, or groundwater interests. To the extent Defendants own groundwater rights in, on, or under the Property or Temporary Workspace Easement, Defendants shall not have a right of access to the acquired surface rights, and no person may construct, maintain, or operate any water well, drilling equipment, or lines on or under the surface acquired by Southern Star without Southern Star's express written permission. Defendants shall, to the extent owned by Defendants, retain all the oil, gas, and other minerals in, on, and under the Property and Temporary Workspace Easement; provided, however, Defendants may not drill or operate equipment for the production or development of oil, gas, and minerals within or on the Property and Temporary Workspace Easement. However, Defendants may extract the oil, gas, and minerals from and under the same by directional drilling and other means, so long as such activities do not damage, destroy, injure, and/or interfere with Southern Star's construction, use, operation, and maintenance of the Compressor Station. Moreover, Southern Star shall not derive any income from the sale of any minerals that may lie beneath the Property or Temporary Workspace Easement.

37.     Southern Star shall comply in all respects, at its sole cost, with all federal, state, and local laws, rules, and regulations applicable to Southern Star's activities hereunder, to the extent that the state and local laws, rules, and regulations are not inconsistent with or preempted by the federal laws, rules, and regulations.

38.     Southern Star hereby agrees to indemnify and hold Defendants harmless from and against any claim, liability, or loss from personal injury and/or property damage resulting from or arising out of the use by Southern Star, its contractors, servants, agents, or invitees of the Temporary Workspace Easement. However, the above statement does not limit Southern Star's right to pursue any and all claims, liabilities, or damages as may be due to or caused by the acts of Defendants or their servants, agents, or invitees.

39.     Southern Star shall have the right to assign its Temporary Workspace Easement to the extent allowed by applicable law, and the rights granted hereunder, while in effect, may be assigned in whole or in part to one or more assignees. The easement provisions of this Verified Complaint, including all benefits and burdens, shall be covenants running with the land and shall bind Southern Star, Defendants, and their respective successors and assigns.

40.     As certified by FERC and described herein and in Exhibit 1, the condemnation of the Property in fee simple and the Temporary Workspace Easement serve the public convenience and necessity.

41.     Southern Star's intended use of the Property and Temporary Workspace Easement are within the authority conferred by the Certificate.

42.     Pursuant to FED. R. CIV. P. 65(c), Southern Star will deposit into the Court's registry the amount required by the Court to secure the compensation the Court will ultimately award

Defendants for the Property and Temporary Workspace Easement sought. Defendants may withdraw from the deposit, subject to terms specified by the Court.

## Count Two: Declaratory Relief

43.    Southern Star incorporates by reference paragraphs 1 through 42.

44.    Southern Star holds a FERC Certificate authorizing Southern Star to construct and operate the Project.

45.    Southern Star is unable to acquire the Property and Temporary Workspace Easement by contract with Defendants.

46.    As evidenced by the FERC Certificate, the Project serves a public and necessary purpose.

47.    Therefore, Southern Star requests that the Court declare that, pursuant to 28 U.S.C. § 2201, the FERC Certificate, and the NGA, Southern Star has the substantive right to exercise eminent domain over and condemn the Property in fee and the Temporary Workspace Easement as outlined in this Verified Complaint and Certificate.

## Count Three: Injunctive Relief

48.    Southern Star incorporates by reference paragraphs 1 through 47.

49.    Southern Star seeks an order granting it immediate entry upon the Property and Temporary Workspace Easement identified herein.

50.    Pursuant to the FERC Certificate, Southern Star is entitled to possession of the Property and Temporary Workspace Easement. Southern Star must immediately access and enter the Property and Temporary Workspace Easement, so that it can: timely commence, operate, and maintain service from the Project pending the Court's determination of just compensation; meet the needs of Southern Star's shippers and their customers; and comply with applicable regulations,

the Agreements' In-Service Date, and the fabrication contract. If Southern Star does not obtain the requested injunctive relief, it cannot comply with the In-service Date required by its shippers and their customers and meet the public's needs. Further, Southern Star has justifiable concerns that further delays will cause the fabricator to remove Southern Star from its production schedule. As a result, in the absence of injunctive relief, Southern Star will suffer immediate and irreparable harm for which no adequate remedy at-law exists.

51.     Upon Court order, Southern Star will post the required security reflective of the total estimate of just compensation due to Defendants for the acquisition of the Property and Temporary Workspace Easement. As a result, the Court granting immediate possession to Southern Star would not harm Defendants.

52.     As the Court granting Southern Star immediate possession would not harm Defendants and would prevent Southern Star from suffering irreparable harm, the balance of the harms weighs in Southern Star's favor.

53.     Pursuant to the Certificate and the NGA, Southern Star possesses a substantive right to condemn the Property and Temporary Workspace Easement. Therefore, Southern Star has a strong likelihood of success on the merits.

54.     The Certificate establishes that the Cedar Vale Project and Southern Star's acquisition of the Property and Temporary Workspace Easement serve the public convenience and necessity. *See* Certificate, Exhibit 2, ¶¶ 19, 31, 42, 45. Therefore, the Project serves the public interest.

55.     Accordingly, Southern Star requests that the Court enter an order granting injunctive relief to permit Southern Star to immediately enter and access the Property and

Temporary Workspace Easement, commence and complete construction of the Cedar Vale Project, and operate and maintain the Project pending the Court's determination of just compensation.

<b>Federal Rule of Civil Procedure 71.1(d) Notices</b>

56.     Pursuant to FED. R. CIV. P. 71.1(d)(1), Southern Star is hereby delivering to the Clerk of Court the requisite notices to the Defendants named herein, as identified in Exhibit 1.

WHEREFORE, Southern Star respectfully prays that this Honorable Court:

a.    Deem the Notice submitted herewith pursuant to FED. R. CIV. P. 71.1(d) to be good and sufficient;

b.    Order that said Notice be served on the Defendants in a manner set forth by FED. R. CIV. P. 71.1(d)(3);

c.    Recognize and declare Southern Star's substantive right to appropriate, through eminent domain, the Property and Temporary Workspace Easement;

d.    Enter an order granting Southern Star immediate entry onto the Property and Temporary Workspace Easement identified and described herein prior to the Court's determination of just compensation, upon the posting of the security required by the Court, to begin pre-construction activities, construction of the Compressor Station upon receipt of the notice to proceed, and operation and maintenance of the Compressor Station;

e.    Appoint a commission for the determination of just compensation on the takings pursuant to FED. R. CIV. P. 71.1(h)(2);

f.    Enter judgment and order(s) of taking in favor of Southern Star, condemning and vesting in Southern Star the Property and Temporary Workspace Easement identified and described herein; and

g.      Issue all necessary and/or appropriate orders and decrees, and for all other general,

equitable, and legal relief as the Court deems just and proper.

Respectfully submitted,

/s/ Mark Banner

Mark Banner, OBA # 13243
Mason B. McMillan, OBA # 35182
**HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.**
521 East 2nd Street, Suite 1200
Tulsa, OK  74120
Telephone (918) 594-0400
Facsimile (918) 594-0505
Email: mbanner@hallestill.com
**ATTORNEY FOR PLAINTIFF,
SOUTHERN STAR CENTRAL GAS
PIPELINE, INC.**

## VERIFICATION

STATE OF KENTUCKY )
                  ) ss.
COUNTY OF DAVIESS )

I, Shawn Patterson, after being duly sworn, depose and state:

1.  I am the President and Chief Executive Officer ("CEO") of Southern Star Central Gas Pipeline, Inc. ("Southern Star"), and I oversee the Cedar Vale Compressor Station Project ("Cedar Vale Project").

2.  I supervise Southern Star's efforts to acquire the Property and Temporary Workspace Easement and other interests needed for the Cedar Vale Project and oversee the overall construction of the Cedar Vale Project.

3.  I am authorized and qualified to make this verification on behalf of Southern Star based on my personal knowledge of the factual matters set forth in the above Verified Complaint.

4.  I have read the foregoing Verified Complaint and am familiar with its contents.

5.  The statements of fact contained in the Verified Complaint are within my personal knowledge and are true and accurate.

_____
Shawn Patterson, CEO


Subscribed and sworn to before me this 13 day of February 2026.

_____
Notary Public

My Commission Expires: 8-22-26
My Commission No.: KYNP 54842

21791933.1:733765.02348

SARAH R O'BRYAN
NOTARY PUBLIC
COMMISSION #
KYNP54842
EXPIRES
08.22.26
DAVIESS COUNTY, KENTUCKY